**LexisNexis®** *Total Research System*

Switch Client ┆ Preferences ┆ Sign Off ┆ ? Help

Search ┆ Research Tasks ┆ Get a Document ┆ *Shepard's®* ┆ Alerts                    History ┆ 🖺

Source: Legal > Cases - U.S. > All Courts - By Circuit > 2nd Circuit - Federal & State Cases, Combined ⓘ
Terms: police w/5 witness w/25 immun! and ((testimony or testify) w/5 grand jury)  (Edit Search | Suggest Terms for My Search)

✛Select for FOCUS™ or Delivery
☐

*1997 U.S. Dist. LEXIS 1665, \**

MANUEL MORILLO and NATIVIDAD ROMAN MORILLO, Plaintiffs, -v.- THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, MICHAEL WALSH, KATHY ALVAREZ, STEVEN PATAKI, P.O. "JOHN DOE", and P.O. "JOHN ROE", (Two unidentified police officers involved in the illegal arrest and imprisonment of the plaintiff), Defendants.

95 Civ. 2176 (JSM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 1665

February 19, 1997, Decided
February 20, 1997, FILED

**DISPOSITION: [\*1]** Plaintiffs' motion for partial summary judgment for false imprisonment and malicious prosecution against defendants Michael Walsh, Steven Pataki, and the City of New York and for violation of 42 U.S.C. § 1983 against Michael Walsh and Steven Pataki granted. Steven Pataki's motion for summary judgment denied.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiffs, the arrestee and his wife, filed motions for summary judgment in their action for false imprisonment and malicious prosecution against defendants, the police officers and the city, and under 42 U.S.C.S § 1983 against the officers. One of the officers filed a motion for summary judgment claiming he had absolute immunity from liability for his actions in connection with the arrestee's arrest and prosecution.

**OVERVIEW:** The arrestee was arrested and charged with criminal possession of a controlled substance in the first degree and criminal possession of a weapon. The officers testified before the grand jury that they witnessed the arrestee drop a bag of cocaine and that they found a weapon in his possession. The arrestee was convicted and served time in prison. Thereafter, the officers pled guilty to and were convicted of perjury in connection with their testimony. One of the officers admitted that the physical evidence seized was recovered during an illegal search. As a result, the arrestee proved the necessary elements of malicious prosecution. One of the officers claimed that he was merely a witness and not the complaining witness and thus entitled to immunity. The court found that said officer was in fact the arresting officer and was present when the arrestee was placed in handcuffs. Therefore, he was not immune from liability. The court also found that the arrestee proved the elements of false imprisonment: he was intentionally confined, he was conscious of his confinement, and he did not consent to the confinement.

**OUTCOME:** The arrestee's motion for partial summary judgment for false imprisonment

and malicious prosecution against defendants and for violation of § 1983 against the officers was granted. The officer's motion for summary judgment was denied.

**CORE TERMS:** arrest, probable cause, immunity, grand jury, police officers, perjury, false imprisonment, malicious prosecution, arrested, criminal possession, summary judgment, probable, cause to arrest, custody, illegal search and seizure, causes of action, cocaine, bag, criminal proceedings, citations omitted, weapon, district attorney, controlled substance, complaining witness, confinement, initiating, convicted, apartment, false testimony, deposition

**LEXISNEXIS® HEADNOTES**                                                                                     ⊟ **Hide**

Criminal Law & Procedure > Grand Juries > Self-Incrimination Privilege > Immunity > General Overview 🖳
Criminal Law & Procedure > Witnesses > Presentation 🖳
*HN1* ⤵ The issue of a **police witness' immunity** for **grand jury** or trial **testimony** depends on a determination regarding the extent of that witness' role in initiating the prosecution.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Defamation > General Overview 🖳
Torts > Intentional Torts > Malicious Prosecution > General Overview 🖳
*HN2* ⤵ Where the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a "complaining witness" renders him liable to the victim under 42 U.S.C.S. § 1983, just as it did at common law, and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Torts > Intentional Torts > False Imprisonment > Elements 🖳
*HN3* ⤵ To establish a cause of action for false imprisonment, the plaintiff must show that (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. According to New York law, neither actual malice nor lack of probable cause is an essential element of the claim.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Arrests > Probable Cause 🖳
Criminal Law & Procedure > Arrests > Warrantless Arrest 🖳
*HN4* ⤵ An arrest made without a warrant is presumed to be unlawful, and in such a case, the burden rests with the defendant to prove legal justification for the arrest. Only probable cause existing at the time of arrest will validate the arrest and relieve the defendant of liability.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Arrests > Warrantless Arrest 🖳
Criminal Law & Procedure > Search & Seizure > Fruit of the Poisonous Tree > Attenuation 🖳
*HN5* ⤵ The fruit of an illegal search cannot give rise, in a juristic sense, to probable cause to arrest, and the conceded illegality of the search and seizure is thus conclusive against the defendant on the issue of privilege.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Torts > Intentional Torts > False Imprisonment > Defenses > Justification 🖳

Torts > Intentional Torts > Malicious Prosecution > Elements > Probable Cause > Evidence 📖

*HN6* To establish a claim for malicious prosecution, the plaintiff must show (1) the commencement or continuation of a criminal proceeding against the plaintiff; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice. In contrast to a claim of false imprisonment, a cause of action for malicious prosecution requires the plaintiff to plead lack of probable cause. Actual malice may be inferred from the absence of probable cause.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Torts > Intentional Torts > Malicious Prosecution > Elements > Probable Cause > Definitions 📖

*HN7* For purposes of the tort of malicious prosecution, probable cause has been defined as the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of or whether a discreet and prudent person would be led to the belief that a crime had been committed by the person charged. The existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the defendant at that time.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Accusatory Instruments > Indictments 📖
Criminal Law & Procedure > Pretrial Motions > Suppression of Evidence 📖
Evidence > Inferences & Presumptions > Presumptions 📖

*HN8* An indictment by a grand jury gives rise to a presumption of probable cause. The presumption may be overcome, however, by evidence showing that police witnesses have not made a complete and full statement of facts to the grand jury or to the district attorney, that the witnesses have misrepresented, falsified or withheld evidence, or otherwise acted in bad faith. New York law specifically provides, for a plaintiff to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Arrests > Probable Cause 📖

*HN9* Probable cause has been defined as a reasonable suspicion that the party is guilty of the offense. The suspicion must be as to a fact of guilt, not the possibility of obtaining a conviction.  More Like This Headnote

Civil Rights Law > Section 1983 Actions > Elements > Color of State Law > General Overview 📖
Civil Rights Law > Section 1983 Actions > Elements > Protected Rights 📖
Civil Rights Law > Section 1983 Actions > Scope 📖

*HN10* 42 U.S.C.S. § 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. In order to establish a valid claim under § 1983 a plaintiff must show that (1) the conduct at issue was engaged in under color of state law and (2) the conduct subjected the plaintiff to a deprivation of rights guaranteed by the Constitution or federal law.  More Like This Headnote

Business & Corporate Law > Agency Relationships > Duties & Liabilities > Authorized Acts of Agents > Liability of Principal 📖
Business & Corporate Law > Agency Relationships > Duties & Liabilities > Unlawful Acts of Agents > Intentional & Willful Injuries 📖
Torts > Vicarious Liability > Employers > Scope of Employment > Factors 📖

*HN11* The doctrine of respondeat superior renders an employer vicariously liable for the

torts of its employees, even when the employee's actions are intentional, if the actions were done while acting within the scope of his employment. Courts rely on various factors to determine whether a particular act falls within the scope of employment. The test has been characterized as whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions. The precise act or the exact manner of injury need not have been foreseen as long as the general type of conduct may have been reasonably expected. There is no vicarious liability, however, for torts committed by the employee while he was acting solely for personal motives unrelated to the furtherance of the employer's business. Because the issue of whether a particular act is within the scope of employment depends so heavily on factual considerations, it is ordinarily one for the jury to decide.  More Like This Headnote

**COUNSEL:** For plaintiffs: Joseph Lanni, Dinkes & Morelli, New York, New York.

For defendants: Gail Donoghue, Tom Crane, Corporation Counsel of the City of New York, New York, New York. Joseph P. Baumgartner, Lysaght, Lysaght & Kramer, P.C., Lake Success, New York. Joseph Crowley, Crowley & Bolz, Esqs., Elmhurst, New York.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINION BY:** JOHN S. MARTIN, JR.

**OPINION**

**MEMORANDUM OPINION AND ORDER**

JOHN S. MARTIN, Jr., District Judge:

Plaintiff, Manuel Morillo, was arrested in a building on West 138th Street in Manhattan on February 8, 1991 and charged with criminal possession of a controlled substance in the first degree and criminal possession of a weapon. Defendants Michael Walsh and Steven Pataki -- both New York City Police Officers at the time -- testified twice before a grand jury and at Morillo's trial that they had observed Morillo drop a bag **[*2]** containing two pounds of cocaine on the ground. They further testified that after placing Morillo in custody, a loaded .357 firearm was found in his possession. Morillo was convicted at trial on both charges.

Defendant Walsh later recanted his account and admitted that he never saw Morillo drop a bag with cocaine and did not find a weapon in Morillo's possession. Walsh also admitted that the physical evidence used to support the charges was recovered from an apartment at 621 West 138th Street during an illegal search and seizure undertaken after Morillo was already in custody. Walsh pled guilty to perjury in connection with Morillo's case and testified against Pataki who was subsequently convicted of perjury. Morillo had served more than three years of a fifteen year-to-life sentence when he was released in May 1994 after Walsh admitted he had committed perjury.

Plaintiffs, Manuel Morillo and his wife, Natividad Roman Morillo, are moving for summary judgment on the causes of action for false imprisonment and malicious prosecution against defendants Walsh, Pataki, and the City of New York and under 42 U.S.C. § 1983 against Walsh and Pataki. Defendant Pataki is cross-moving for summary **[*3]** judgment claiming he has absolute immunity from liability for his actions in connection with Morillo's arrest and

prosecution. Defendant New York City denies liability on the theory that the police officers were acting outside the scope of their employment when they arrested plaintiff and subsequently testified against him before the grand jury and at trial; or, in the alternative, that there is an unresolved factual question regarding whether Walsh and Pataki were acting within the scope of their employment, thus precluding summary judgment for plaintiffs.

For the following reasons, plaintiffs' motion for partial summary judgment is granted and defendant Pataki's motion for summary judgment is denied.

## PATAKI'S IMMUNITY

Before discussing the merits of plaintiffs' claims, it is necessary to address defendant Pataki's assertion that he is absolutely immune from liability for his actions in connection with Morillo's arrest and prosecution. For the following reasons, the Court rejects Pataki's claim of **immunity**.

HN1 The issue of a **police witness' immunity** for **grand jury** or trial **testimony** depends on a determination regarding the extent of that witness' role in initiating the **[*4]** prosecution. In _White v. Frank, 855 F.2d 956 (2d Cir. 1988)_, the Court of Appeals underscored the distinction between a "complaining witness" who is not entitled to immunity, and a "mere witness" who is. In reviewing the common law of immunity, the Court explained: "Those whose role was limited to providing testimony enjoyed immunity; those who played a role in initiating a prosecution -- complaining witnesses -- did not enjoy immunity." _Id. at 958-59._ In _White v. Frank_, two police officers who had testified before a grand jury were found not to have immunity, although the Court noted, "they may yet be entitled to immunity if further exploration of the facts demonstrates that they did not play a _sufficient role_ in initiating the prosecution to be liable for the constitutional tort of malicious prosecution." _Id. at 962._

Pataki argues that he was not a "complaining witness," but rather a "mere witness" in the criminal proceedings against Morillo, and therefore, entitled to immunity for his actions. To support this assertion Pataki outlines the active role that defendant Walsh took in the arrest and booking of Morillo, contrasting Pataki's own role by stressing that **[*5]** he merely acted as a witness at a later stage in the prosecution. Pataki states that Walsh handcuffed Morillo while Pataki was out of the room, that Walsh processed the on-line booking of plaintiff at the precinct and had discussions with the assistant district attorney concerning the circumstances of the arrest, and that Walsh signed the criminal complaint prepared by the assistant district attorney and provided the supporting affidavit -- none of which Pataki did. Thus, according to Pataki, he did not play a "sufficient role in initiating the prosecution" to be held liable in this civil action.

The plaintiff, on the other hand, lists the various acts that Pataki did participate in beyond his **testimony** to the **grand jury** and at trial. Plaintiff states that Pataki did participate in the arrest of plaintiff, even if he did not place the handcuffs on plaintiff, he illegally entered the apartment where the bag of cocaine and the gun were seized, he conspired with Walsh to give false testimony about how the physical evidence was obtained and about plaintiff's connection to that evidence, he agreed with Walsh to conceal and did conceal the illegal search and seizure, _and_ he testified **[*6]** before two grand juries and at trial.

While it is true that Walsh was the officer who actively processed the complaint against Morillo at the precinct on the night of February 8, 1991, Pataki was nonetheless an arresting officer. It is inaccurate to indicate that _all_ Pataki did was testify as a witness. Even after drawing all justifiable inferences in Pataki's favor, it is clear to this Court that Pataki was present when Morillo was put in custody and when the illegal search and seizure took place, and that he actively participated in the continuing scheme to give false testimony about the circumstances of Morillo's arrest and his and Walsh's illegal conduct. It was not mere

coincidence that Walsh and Pataki gave the same false account regarding the circumstances of Morillo's arrest. Walsh admitted in his sworn deposition that he and Pataki conspired to commit perjury by agreeing to give a false account of the circumstances of the arrest on February 8, 1991. This is not a case where an officer's only participation in a prosecution is when he is called to testify at trial and then commits perjury. See _Briscoe v. LaHue_, 460 U.S. 325, 341-45; 103 S. Ct. 1108, 1119-1121, 75 L. Ed. 2d 96 **[*7]** (absolute immunity to police officer for perjured testimony). As the Second Circuit explained in _White v. Frank_, numerous decisions have afforded immunity to police officers and other officials sued under section 1983 for testifying falsely at pre-trial proceedings and at trial. But, the Court noted, "the decisions have not been careful to recognize that such immunity is available only where the constitutional tort is simply false testimony." 855 F.2d 956, 961 (citations omitted).

In this case, as the record indicates, officers Walsh and Pataki were together when Morillo was arrested, Pataki was in the building when the gun and drugs were taken from the apartment at 621 West 138th Street, Pataki was in the squad car when Morillo was brought to the 30th Precinct, and even though he did not process the booking, he and Walsh gave virtually identical accounts of the events surrounding Morillo's arrest. Pataki is a defendant in this case, not because he merely testified falsely, but because of his participation in the arrest as well as the initiation and advancement of baseless charges against plaintiff. Pataki was an active participant in the fraudulent circumstances surrounding **[*8]** Morillo's arrest and prosecution. As such, according to the Second Circuit:

> HN2 Where . . . the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a "complaining witness" renders him liable to the victim under section 1983, just as it did at common law, and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution.

_White v. Frank_, 855 F.2d at 961. Pataki certainly participated in the initiation and facilitation of the criminal prosecution of Morillo and can not successfully characterize himself as a "mere witness" entitled to absolute immunity.

Therefore, it is the conclusion of the Court that Pataki's conduct does not allow him to escape liability for his participation in the arrest and prosecution of Morillo. Pataki's role, while not as involved as defendant Walsh, was more substantial than a mere witness and, therefore, as a "complaining witness," Pataki is not immune from civil liability.

## FALSE IMPRISONMENT:

HN3 To establish a cause of action **[*9]** for false imprisonment, the plaintiff must show that (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. _Broughton v. State of New York_, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310 (1975). According to New York law, neither actual malice nor lack of probable cause is an essential element of the claim. _Id._, 373 N.Y.S.2d at 93.

HN4 An arrest made without a warrant is presumed to be unlawful, and in such a case, the burden rests with the defendant to prove legal justification for the arrest. _Id._ at 458, 373 N.Y.S.2d at 95. "Only probable cause existing at the time of arrest will validate the arrest and relieve the defendant of liability." _Id._; see also _Ostrover v. City of New York_, 192 A.D.2d 115, 118, 600 N.Y.S.2d 243, 244 (1st Dept. 1983).

The first three elements of the false imprisonment claim are easily met by plaintiff. First, Morillo was intentionally confined by defendants Walsh and Pataki when he was detained in

police custody at 621 West 138th Street, arrested, taken to the police station **[*10]** to be booked, and held in jail on the charges of criminal possession of a controlled substance in the first degree and criminal possession of a weapon. Second, Morillo was conscious of the confinement. And third, Morillo did not consent to the confinement.

The pivotal issue for this claim rests with the fourth element of a false imprisonment cause of action -- whether it can be shown that there was probable cause to arrest Morillo, thus making the arrest privileged. **1** The burden of proving that there was probable cause to make the warrantless arrest lies with the defendants. "To defeat plaintiff's motion for partial summary judgment on liability for false imprisonment, the defendant's burden [is] to demonstrate that a factual question exist[s] with respect to whether the arrest was based on probable cause." _Ostrover_, 192 A.D.2d 115, 118, 600 N.Y.S.2d 243, 244. In this case, Walsh conceded in his sworn deposition that he did _not_ have probable cause to arrest Morillo on the charges for which Morillo was arrested. He also admitted that the arrest of Morillo on the crimes charged constituted a "false arrest."

**FOOTNOTES**

1 Plaintiffs have set forth facts sufficient to satisfy the Court that the arrest was not privileged. See _Broughton v. State of New York_, 37 N.Y.S.1d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310 (1975).

**[*11]** The city argues that there is a disputed question of fact as to whether probable cause or reasonable suspicion existed to take plaintiff into custody on a different charge, thus precluding summary judgment on the false imprisonment cause of action. To support its argument, the city cites Walsh's testimony that although he did not see Morillo drop the bag containing two pounds of crack cocaine, he did find a one ounce bag of cocaine on the floor near where plaintiff was initially stopped. **2**

**FOOTNOTES**

2 Walsh stated in his deposition that he believed he had probable cause to place plaintiff in custody, but not to arrest him for the crimes charged.

Whether or not there was probable cause to arrest plaintiff for the small amount of cocaine is irrelevant to the determination of whether there was probable cause to arrest the plaintiff on the charges of criminal possession of a controlled substance in the first degree and criminal possession of a weapon. The critical issue is not whether there was probable cause to make an **[*12]** arrest on _different grounds_, but whether there was probable cause to arrest plaintiff for the crimes actually charged. Even if it were found that there was reasonable suspicion to stop or probable cause to arrest Morillo for possession of the small amount of cocaine, Morillo was never charged for possession of that small amount. He was arrested and charged with possession of the drugs claimed to have been found in a garbage bag near where plaintiff was stopped. Those drugs were actually found during the course of an admittedly illegal search and seizure **3** and cannot be relied on to establish probable cause. _Ostrover_, 192 A.D.2d at 118, 600 N.Y.S.2d at 244-45. As the _Ostrover_ court noted, $^{HN5}$ "the fruit of an illegal search cannot give rise, in a juristic sense, to probable cause to arrest, and the _conceded illegality_ of the search and seizure is thus _conclusive against the defendant on the issue of privilege_." _Id._ (emphasis added).

**FOOTNOTES**

3 Defendant Walsh admitted during his deposition that he and Pataki illegally broke into the apartment at 621 West 138th Street where the drugs and gun were found and later falsely attributed to plaintiff.

[*13] Thus, Walsh's concession that the evidence was fraudulently obtained during an illegal search and seizure, coupled with the fact that both officers perjured themselves regarding the true circumstances of Morillo's arrest, supports this Court's conclusion that there was no probable cause to arrest Manuel Morillo for criminal possession of a controlled substance in the first degree and criminal possession of a weapon. The Court is therefore satisfied that plaintiff has established the requisite elements of the tort of false imprisonment as a matter of law.

## MALICIOUS PROSECUTION:

HN6⚓To establish a claim for malicious prosecution, the plaintiff must show (1) the commencement or continuation of a criminal proceeding against the plaintiff; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice. _Broughton v. State of New York_, 37 N.Y.2d at 456, 373 N.Y.S.2d at 93. In contrast to a claim of false imprisonment, a cause of action for malicious prosecution requires the plaintiff to plead lack of probable cause. _Id._ Actual malice may be inferred from the absence of probable cause. [*14] _Loeb v. Teitelbaum_, 77 A.D.2d 92, 104, 432 N.Y.S.2d 487, 495-96 (2d Dept. 1980); _see also Lancaster v. Kindor_, 98 A.D.2d 300, 305, 471 N.Y.S.2d 573, 577 (1st Dept. 1984).

HN7⚓For purposes of the tort of malicious prosecution, probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of" or whether "a discreet and prudent person would be led to the belief that a crime had been committed by the person charged." _Loeb_, 77 A.D.2d at 103, 432 N.Y.S.2d at 494 (citations omitted). The existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the defendant at that time. 432 N.Y.S.2d at 494-95 (citations omitted).

HN8⚓An indictment by a grand jury gives rise to a presumption of probable cause. _Colon v. City of New York_, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983). The presumption may be overcome, however, by evidence showing that police witnesses have "not made a complete and full statement of facts" to the grand jury or to the [*15] district attorney, that the witnesses have misrepresented, falsified or withheld evidence, or otherwise acted in bad faith. _Id._ at 82-83, 468 N.Y.S.2d at 455-56. New York law specifically provides, for a plaintiff "to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." _Id._ at 83, 468 N.Y.S.2d at 456; _Lee v. City of Mount Vernon_, 49 N.Y.2d 1041, 1042, 429 N.Y.S.2d 557, 407 N.E.2d 404 (1980).

In this case, the Court is satisfied that plaintiff has established each element of the malicious prosecution cause of action. Defendants Walsh and Pataki initiated criminal proceedings against plaintiff, thus satisfying the first element of the tort. Their conduct included taking plaintiff into custody, fraudulently obtaining evidence to use against him, concocting a false story to connect plaintiff to the evidence and to justify the charges against him, and most importantly, falsely testifying before the grand jury and at Morillo's criminal trial. Walsh also officially booked plaintiff at the precinct and signed the [*16] criminal complaint prepared by the assistant district attorney.

The second element is satisfied by the fact that Morillo was released from prison after Walsh pled guilty to perjury in connection with Morillo's arrest and prosecution.

The third element, lack of probable cause, is met for a number of reasons. Initially, Walsh has admitted that there was no probable cause for prosecuting Morillo on the charges for which he was arrested and convicted. Both Walsh and Pataki knew that the prosecution of plaintiff was based on false statements made to the ADA, before the grand jury, and at trial. Furthermore, the evidence used to support the criminal charges against plaintiff was obtained during an illegal search and seizure. Even if it were true that plaintiff was in possession of the one ounce bag of cocaine, no facts have been alleged that would indicate that there was probable cause to prosecute Morillo on the crimes for which he was charged, tried, convicted, and incarcerated. As the Court noted in _Scheiner v. Wallace_, 1996 U.S. Dist. LEXIS 16315, No. 93 CIV. 0062, 1996 WL 633418, at *6 (S.D.N.Y. Oct. 31, 1996), [HN9]"probable cause has been defined as 'a reasonable suspicion that the party is guilty of the offense. [*17] The suspicion must be as to a fact of guilt, not the possibility of obtaining a conviction.'" (citing _Doe v. Smith, 704 F. Supp. 1177, 1187 (S.D.N.Y. 1988)_). That test is not met in this case. The officers knew that the evidence and circumstances supporting the charges was false and that plaintiff was not guilty of those crimes. Finally, the presumption of probable cause raised by the grand jury indictment is clearly overcome by the fact that Walsh admitted and pled guilty to perjury in connection with the prosecution of Morillo and the fact that Pataki was convicted of perjury for his role in that prosecution. _Colon_, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56 (1983) (presumption overcome by, _inter alia_, perjury by police witnesses).

The fourth element, actual malice, is evidenced both by the deliberate perjury engaged in by Walsh and Pataki, as well as by the above finding of lack of probable cause. See _Loeb v. Teitelbaum, 77 A.D.2d at 104, 432 N.Y.S.2d at 495-96_. As discussed above, Walsh and Pataki fabricated the entire circumstances of plaintiff's arrest. The on-line booking sheet filled out by Walsh contained false statements. The criminal complaint prepared by [*18] the assistant district attorney was based on false statements relayed by Walsh. Both Walsh and Pataki committed perjury before the grand jury and at trial. The evidence relied on to support the charges against plaintiff was obtained by a warrantless and illegal search and seizure and the circumstances of its recovery were fabricated by Walsh and Pataki. In substance, the foundation of the prosecution of Manuel Morillo was perjury and false evidence. It is clear that neither Walsh nor Pataki had knowledge of facts to justify a belief that there were "lawful grounds for prosecuting the [plaintiff] in the manner complained of." See _Loeb, 77 A.D.2d at 103-104, 432 N.Y.S.2d at 494_. The Court, therefore, determines that the above outlined conduct constitutes a malicious prosecution.

## 42 U.S.C. § 1983:

42 U.S.C. § 1983 [HN10]provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to establish a valid claim under section 1983 a plaintiff must show that (1) the conduct at issue was engaged in under color of state law and (2) the conduct subjected the plaintiff to a deprivation [*19] of rights guaranteed by the Constitution or federal law. See, e.g., _Eagleston v. Guido, 41 F.3d 865, 876 (2d Cir. 1994)_ (citations omitted).

In this case, defendants Walsh and Pataki, as police officers, acted under color of state law when they took Morillo into custody and officially arrested him and then assisted in his prosecution as government witnesses in the subsequent criminal proceedings.

Plaintiff claims that because of the conduct engaged in by Walsh and Pataki he was deprived of his Fourteenth Amendment due process right to a fair trial and, as a result, deprived of his liberty for more than three years. As discussed above, Walsh and Pataki acted in bad faith throughout the criminal proceedings against Morillo. Walsh and Pataki did not have probable

cause to arrest plaintiff for criminal possession of a controlled substance in the first degree or for criminal possession of a weapon. The evidence used against Morillo was obtained during an illegal search of an apartment at 621 West 138th Street. Walsh admitted that he and Pataki conspired to commit perjury by agreeing ahead of time to falsify their account of the circumstances of Morillo's arrest. While Pataki challenges **[*20]** the existence of a conspiracy, there is no dispute that Walsh and Pataki gave virtually identical and false accounts of the circumstances surrounding plaintiff's arrest. It is not reasonable to infer that such fabricated similarity was a coincidence. Finally, both police officers perjured themselves in their **testimony** before the **grand jury** on two separate occasions and at Morillo's trial.

The prosecution of Morillo was ripe with deceit and falsehood due to the actions of officers Walsh and Pataki. The officers initiated baseless charges against plaintiff based on fraudulently obtained evidence and false circumstances. *See White v. Frank,* 855 F.2d at 961; *cf. Briscoe v. LaHue,* 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983). The record is clear that because of the illegal activity and false testimony of the police officers, Morillo did not receive a fair trial and, as a result, was deprived of his liberty for more than three years in violation of the Due Process clause of the Fourteenth Amendment. As such, defendants Walsh and Pataki violated 42 U.S.C. § 1983 by their illegal and bad faith conduct during the arrest and prosecution of plaintiff Morillo.

## CITY'S [*21] LIABILITY

*HN11* The doctrine of respondeat superior renders an employer vicariously liable for the torts of its employees, even when the employee's actions are intentional, if the actions were done while acting within the scope of his employment. *See, e.g., Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302, 391 N.E.2d 1278 (1979). Courts rely on various factors to determine whether a particular act falls within the scope of employment. The test has been characterized as "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Id.* (citations omitted). The precise act or the exact manner of injury need not have been foreseen as long as the "general type of conduct may have been reasonably expected." *Id.* at 304, 418 N.Y.S.2d at 303. There is no vicarious liability, however, for torts committed by the employee while he was acting solely for personal motives unrelated to the furtherance of the employer's business. *Kirkman v. Astoria General Hospital,* 204 A.D.2d 401, 402, 611 N.Y.S.2d 615, 616 (2d Dept. 1994); *Stavitz v. City of New York,* 98 A.D.2d 529, 531, 471 N.Y.S.2d 272, 274 **[*22]** (1st Dept. 1984). Because the issue of whether a particular act is within the scope of employment depends so heavily on factual considerations, it is ordinarily one for the jury to decide. *Riviello,* 47 N.Y.2d at 303, 418 N.Y.S.2d at 303 (citations omitted).

In this case, the city argues that the police officer defendants were acting outside the scope of their employment and were motivated by a personal purpose rather than the interests of New York City. The city details the litany of other criminal activities engaged in by defendant Walsh -- including numerous acts of stealing money and drugs from suspects -- and attempts to categorize Walsh's behavior with respect to Morillo as part of his repeated practice of illegal conduct for personal monetary gain.

Perhaps, in other procedural circumstances, such arguments would support a denial of summary judgment and require a jury to decide the officers' motivation. In response to Plaintiffs' Amended Request for Admissions under Rule 36 of the Federal Rules of Civil Procedure, however, defendant New York City *admitted* that Walsh and Pataki were acting within the scope of their employment when they arrested Morillo and when **[*23]** they testified against him before the grand jury. The Response of Defendants City of New York and Kathy Alvarez to Plaintiffs' Amended Requests for Admissions reads in pertinent part as follows:

*REQUEST NO. 6:*

6. That P.O. Michael Walsh and P.O. Steven Pataki arrested and placed into custody MANUEL MORILLO at or about 2:00 A.M. - 3:00 A.M. on February 8, 1991.

*RESPONSE TO REQUEST NO. 6:*

6. Admit.

*REQUEST NO.7:*

7. That P.O. Michael Walsh and P.O. Steven Pataki arrested MANUEL MORILLO on February 8, 1991 in the course and within the scope of their employment duties as police officers of the City of New York and the NYPD.

*RESPONSE TO REQUEST NO. 7:*

7. Admit.

*REQUEST NO. 8:*

8. That P.O. Michael Walsh, P.O. Steven Pataki and P.O. Cathy Alvarez testified before the Grand Jury of the Special Narcotics Part of the City of New York in *People v. Morillo* on April 10, 1991 in the course of and within the scope of their employment duties as police officers of the City of New York and the NYPD.

*RESPONSE TO REQUEST NO. 8:*

8. Defendants admit that P.O. Michael Walsh, P.O. Steven Pataki and P.O. Kathy Alvarez testified before the Grand **[*24]** Jury in connection with the arrest of Manuel Morillo and that so testifying was in the course of and within the scope of their employment duties as police officers of the City of New York and the NYPD.

(Resp. Defs. NYC and Alvarez to Pls. Am. Reqs. for Admis. at PP 6-8).

Despite the above admissions, the city asserts that it did not admit that the "prosecution on false charges" was within the scope of the police officers' employment and, therefore, the city should not be held vicariously liable for malicious prosecution. That reasoning ignores the significance of these admissions. The pivotal role of Walsh and Pataki in the commencement and continuation of the criminal prosecution of Morillo was the **testimony** offered before the **grand jury** that eventually issued the indictment. Similarly, the determinative act of the defendant police officers relating to the false imprisonment cause of action was the arrest of plaintiff -- an act the city admitted was done within the scope of the officers' employment for the city and the police department. The city cannot now deny that the officers were acting within the scope of their employment, ignoring its previous admissions. The city made **[*25]** admissions and must be held to them. Thus, the court rejects the city's denial of liability for the torts of false imprisonment and malicious prosecution.

**CONCLUSION:**

For the foregoing reasons, plaintiffs' motion for partial summary judgment for false imprisonment and malicious prosecution against defendants Michael Walsh, Steven Pataki, and the City of New York and for violation of 42 U.S.C. § 1983 against Michael Walsh and Steven Pataki is hereby granted. Steven Pataki's motion for summary judgment is hereby denied. Thus, the only issue remaining for trial is that of the damages plaintiff is entitled to

recover from the defendants.

**SO ORDERED.**

Dated: New York, New York

February *19*, 1997

JOHN S. MARTIN, JR., U.S.D.J.

---

Source: Legal > Cases - U.S. > All Courts - By Circuit > **2nd Circuit - Federal & State Cases, Combined** [i]
Terms: **police w/5 witness w/25 immun! and ((testimony or testify) w/5 grand jury)** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, November 2, 2007 - 11:44 AM EDT

\* Signal Legend:



- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts
History | Delivery Manager | Switch Client | Preferences | Sign Off | Help

⊛ LexisNexis®    About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Off ┊ [?] Help

Search ┊ Research Tasks ┊ Get a Document ┊ *Shepard's®* ┊ Alerts

History ┊ 🖎

Source: Legal > Cases - U.S. > All Courts - By Circuit > **2nd Circuit - Federal & State Cases, Combined** [i]
Terms: **malicious w/2 prosecution w/10 elements and date geq (11/14/2005)** (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

### 2007 U.S. Dist. LEXIS 69801, *

MITCHI CUNNINHAM, MARCUS COPELAND, AND JOHNEL JAMISON, Plaintiffs, v. NEW YORK CITY and POLICE OFFICER MARCUS ROLLINS SHIELD # 11174 OF THE TRANSIT DIVISION DISTRICT 30 And UNIDENTIFIED NEW YORK CITY POLICE OFFICERS, Defendants.

04 Civ. 10232 (LBS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 69801

**September 18, 2007**, Decided
**September 18, 2007**, Filed

**CORE TERMS:** train, arrest, malicious prosecution claim, summary judgment, excessive force, probable cause, mace, state law, probable, station, false arrest, disorderly conduct, battery, assault, malice, booth, de minimus, threatening, immunity, robbery, spray, times, attempted robbery, approached, arrested, hit, ejection, street, token

**COUNSEL:** [*1] For Mitchi Cunningham, Plaintiff: Fred Lichtmacher, LEAD ATTORNEY, Fred B. Lichtmacher, New York, NY.

For Marcus Copeland, Johnel Jamison, Plaintiffs: Fred Lichtmacher, Fred B. Lichtmacher, New York, NY.

For New York City, Defendant: Genevieve Nelson, LEAD ATTORNEY, New York City Law Depart. Office of the Corporation Counsel, New York, NY; Phillip C. Kim, LEAD ATTORNEY, The Rosen Law Firm, P.A., New York, NY; Rachel Amy Seligman, LEAD ATTORNEY, New York City Law Department, New York, NY.

For Marcus Rollins, Police Officer, Shield # 11174 of the Transit Division District 30, Defendant: Phillip C. Kim, LEAD ATTORNEY, The Rosen Law Firm, P.A., New York, NY; Rachel Amy Seligman, LEAD ATTORNEY, New York City Law Department, New York, NY; Genevieve Nelson, New York City Law Depart. Office of the Corporation Counsel, New York, NY.

**JUDGES:** Leonard B. Sand ▾, U.S.D.J.

**OPINION BY:** Leonard B. Sand ▾

**OPINION**

**Memorandum & Order**

**SAND**, J.,

Plaintiffs Mitchi Cunningham, Marcus Copeland, and Johnel Jamison bring this action against the City of New York, NYPD Officer Marcus Rollins, and unidentified NYPD officers. Plaintiffs allege multiple causes of action under 42 U.S.C. § 1983 and state law: (1) Excessive and unreasonable force; (2) False **[*2]** arrest; (3) Malicious prosecution; (4) Common law battery; and (5) Common law assault.

Defendants now move for summary judgment on all claims except (1) that portion of the excessive force claim arising from defendant Rollins allegedly striking plaintiff Cunningham over the head with a baton and (2) plaintiff Cunningham's state law claims for assault and battery arising from Rollins' use of the baton. For the reasons set forth herein, defendants' summary judgment motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

On November 5, 2004, at approximately 9:00 pm, plaintiffs Cunningham, Copeland, and Jamison went with their two friends Curtis Preston and Lavi Lagrande to Times Square to see a movie. Cunningham consumed alcohol prior to heading into Manhattan, while on the train to Times Square, and during the movie. After the movie concluded, Cunningham, Copeland, and Jamison with their two friends boarded the front car of a southbound number 2 train from Times Square to Brooklyn.

While the train headed back to Brooklyn, Copeland lit a cigarette and started smoking. Copeland was then approached by the train's motorman, Ainsley Watson, who instructed him to put out the cigarette. **[*3]** He subsequently put the cigarette out on one of the seats of the subway car. After being confronted by the motorman, Cunningham, Copeland, Jamison, and Preston walked from the front to the back of the train while it was in motion.

When they reached the back of the train, plaintiffs began to rap for about five to six minutes. Cunningham did not participate in the rapping. When the train stopped in the Wall Street station at approximately 2:55 AM, officer Rollins along with the train's motorman boarded the train and instructed the plaintiffs to get off the train. Plaintiffs protested their ejection and argued with the officer before exiting the train.

After exiting the train, the plaintiffs continued to protest their ejection. As plaintiffs were being escorted out of the subway station by Officer Rollins, they all stopped walking near the turnstiles and turned around to face the officer. While facing Officer Rollins, Copeland stated, "where are we going now?" In response to Copeland, Officer Rollins responded, "You better leave the train station or I'm going to mace y'all."

At that point, the plaintiffs did not immediately leave the train station. Plaintiffs continued to protest their ejection **[*4]** and Copeland responded, "We paid our money. We ain't going nowhere." Rollins then discharged his mace. Plaintiffs backed up, ran towards the staircase, and then stopped. When Cunningham came back downstairs to ask Officer Rollins for his badge number, plaintiffs allege that Rollins hit Cunningham on his head with his baton.

Plaintiffs further allege that Cunningham was doing nothing threatening to Rollins when he hit him in the head with his baton. They also contend that prior to hitting Cunningham, Rollins made no attempt to arrest Cunningham. Rollins claims that he hit Cunningham in the chest after Cunningham "launched" at him. Token booth clerk Joanna Brown, who was manning token booth R-111 at the Wall and William Street station during the entire incident, watched the events unfold and testified that she did not see the plaintiffs do anything physically threatening to Rollins. According to Ms. Brown's deposition, although token booth

clerks have an emergency button in the token booth which Brown has pushed many times over her 23-year career, she did not push the button at any time during the incident.

After being hit with the baton, Cunningham turned to run up the stairs as he began [*5] bleeding profusely. After two steps up, he began to collapse. Copeland and Jamison came to his assistance and helped him to the street. Copeland and Jamison were helping Cunningham as they searched for help. Rollins testified that they were moving too fast for him to catch up to them.

On the street close to the subway station, the plaintiffs approached a marked police van and the officers asked what happened to Cunningham and why he was bleeding. Police officers from the van called an ambulance for Cunningham which brought him to St. Vincent's Hospital. Cunningham was brought to the hospital where he received 5 stitches to his left eyebrow and 4 stitches to his nose. Police officers handcuffed and arrested Cunningham while he was in the hospital. Cunningham was then brought to Transit Division District 30 where he was locked in a cell. In the precinct, Cunningham was lying on a bench in his cell vomiting blood.

Rollins subsequently signed a document alleging that plaintiffs violated New York Penal Law § 110/160.10, Attempted Robbery in the Second Degree, a Class D felony. Rollins swore in his criminal affidavit that, while he was surrounded by all three plaintiffs, Cunningham stated, [*6] "Fuck that, he's by himself. Let's take his gun," after which the three plaintiffs allegedly approached Rollins. Both Brown and Preston contradict this allegation. All the plaintiffs voluntarily gave taped statements to the ADA assigned to the case, Jeffrey Jackson. After a day in custody, the plaintiffs were arraigned on charges of disorderly conduct and second-degree attempted robbery. Plaintiffs were forced to post $ 500.00 bail each, and they were released from jail.

The following morning Cunningham's father brought him to Kings County Medical Center. On November 8, 2004, a CT scan identified several injuries including but not limited to intra-cranial air and a fractured cribriform plate. Cunningham was admitted to Kings County Hospital for observation and prevention of meningitis and brain abscess. Due to the persistence of intracranial air, surgery was performed on November 11, 2004. The operation was to prevent meningitis, brain abscess, and reduce the air on Cunningham's brain. The procedure performed was a bifrontal craniotomy and obliteration of the frontal sinuses. During surgery, fractures extending into the cribriform plate were found as well as a frontal sinus hematoma. [*7] The posterior and lateral walls of the frontal sinuses were removed as well as all frontal sinus lining. Cunningham was monitored in the ICU until November 11, 2004, and he was discharged on November 15, 2004.

The criminal charges brought against the plaintiffs were dismissed and sealed on May 17, 2005, after the plaintiffs had appeared in court on November 7, 2004, February 8, 2005, and May 17, 2005.

## DISCUSSION

A motion for summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the evidence submitted must be viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). While credibility determinations, weighing evidence, and drawing legitimate inferences from facts are functions that the Court must leave to the jury, if the nonmoving party does not present evidence from which a reasonable jury could return a favorable verdict, then summary judgment is appropriate. See, e.g., Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004). The Court has considered [*8] plaintiffs' complaint in light of these standards.

## A. False Arrest Claim

Plaintiffs allege that they were arrested without legal justification in violation of their rights under 42 U.S.C. § 1983 and New York state law. Defendants contend that probable cause existed to arrest defendants on charges of disorderly conduct as well as various violations of New York City Transit Rules.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under state law or under § 1983 ." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996) (internal citation and quotation omitted). Probable cause is found "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (citations omitted).

The Second Circuit has recently clarified that the relevant inquiry is whether "probable cause existed to arrest a defendant" and that "it is not relevant whether probable cause existed with respect to each individual **[*9]** charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). In other words, "we focus on the validity of the arrest, and not on the validity of each charge." Id. Probable cause thus requires "a reasonable ground for belief of guilt" - that is, commission of a crime - as well as that "the belief of guilt must be particularized with respect to the person to be searched or seized." Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

In the present case, plaintiffs were arrested, *inter alia,* for violating New York Penal Law Section § 240.20, Disorderly Conduct. The statute provides:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
>
> 2. He makes unreasonable noise; or
>
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture...
>
> 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse...

Defendant Rollins was told by Ainsley Watson, the motorman of **[*10]** the Metropolitan Transit Authority "2" subway train, that plaintiffs were acting "disorderly." Specifically, Watson told defendant Rollins that the plaintiffs were being loud and obnoxious, and wanted them removed from the train. He also stated that they were "talking and singing." Plaintiffs admitted to encouraging other passengers on the train to engage in a "rap" competition, and after they refused, plaintiffs began to "rap" amongst themselves. After they were instructed to get off the train by Officer Rollins at the Wall Street station, plaintiffs continued their disorderly conduct by refusing to comply with Officer Rollins' instruction to leave the train. Officer Rollins had to repeat his instruction several times before plaintiffs finally complied.

Once plaintiffs got off the train, Officer Rollins ordered them to leave the station, and again,

plaintiffs refused to comply. Plaintiffs protested their ejection and continued to argue with Officer Rollins with raised voices. As they approached the turnstiles to exit the train station, plaintiffs continued to protest their ejection. When plaintiffs reached the turnstiles, they turned around to face Officer Rollins and plaintiff Copeland **[*11]** stated, "We paid our money. We ain't going no where."

This Court finds that plaintiffs' defiance of Officer Rollins' lawful orders is undisputed evidence of their disorderly conduct in violation of New York Penal Law Section § 240.20 and provides sufficient probable cause for their arrest. The plaintiffs' false arrest claims under both § 1983 and New York state law are therefore dismissed. [1]

**FOOTNOTES**

[1] As this Court dismisses plaintiffs' false arrest claims based on the existence of probable cause for disorderly conduct, we need not consider whether plaintiffs' violations of New York City Transit Rules would be sufficient to justify their arrests.

**B. Malicious Prosecution**

Plaintiffs contend that they were maliciously prosecuted by Officer Rollins in violation of their rights under 42 U.S.C. § 1983 and New York state law. Defendants maintain that Officer Rollins did not initiate the prosecution against the defendants nor did he act with the requisite malice to sustain a **malicious prosecution** claim.

The **elements** of **malicious prosecution** under section 1983 and New York state law are substantially the same. Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991). A plaintiff "must establish that: (1) the defendant **[*12]** either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." Id. [2] The only additional **element** for a federal action for **malicious prosecution**, not necessary for a state action, is a deprivation of liberty consistent with the concept of seizure. [3] Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995). The presence of probable cause bars a claim of malicious prosecution. Richards v. City of New York, 2003 U.S. Dist. LEXIS 8037, at *31 (S.D.N.Y. May 7, 2003).

**FOOTNOTES**

[2] Defendants do not argue that the prosecutions were not terminated in the plaintiffs' favor or that probable cause existed to prosecute plaintiffs for second-degree attempted robbery.

[3] This requirement is satisfied as the plaintiffs were arrested and forced to appear in court several times before the charges were dismissed.

Probable cause in malicious prosecutions and false arrest cases is distinguishable. A line of Second Circuit cases makes clear that even in instances where there may have been probable cause to arrest on one offense, **[*13]** a prosecution for another offense, particularly a more serious offense, still gives rise to a malicious prosecution. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997); Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003). By contrast, probable cause is always a complete defense to an action for false arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

"In **malicious prosecution** cases against police officers, plaintiffs have met this first **element** [of initiation of prosecution] by showing that officers brought formal charges and had the person arraigned, <u>Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994)</u>, or filled out complaining and corroborating affidavits, <u>Carter v. Port Auth. of New York & New Jersey, 2004 U.S. Dist. LEXIS 25633, 2004 WL 2978282, at *8 (S.D.N.Y. Dec.20, 2004)</u>, or swore to and signed a felony complaint. <u>Cox v. County of Suffolk, 827 F.Supp. 935, 938 (E.D.N.Y.1993)</u>." <u>Llerando-Phipps v. City of New York, 390 F.Supp.2d 372, 382-83 (S.D.N.Y. 2005)</u>; see also <u>Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1995)</u>.

In the instant action, Officer Rollins initiated the robbery prosecution by filing the charges of second-degree attempted robbery against the plaintiffs. Officer Rollins personally swore **[*14]** in his criminal affidavit that, while he was surrounded by all three plaintiffs, Cunningham stated, "Fuck that, he's by himself. Let's take his gun," after which the three plaintiffs threateningly approached him. Moreover, plaintiffs allege that Officer Rollins signed the criminal affidavit with full knowledge of its falsity in order to justify his use of a baton on Cunningham. Cf. <u>Chimurenga v. The City of New York, 45 F.Supp.2d 337, 343 (S.D.N.Y.1999)</u> (denying summary judgment on the initiation **element** of **malicious prosecution** where triable issues remained as to whether correction officers gave prosecuting authorities false information because these officers were alleged to have planted evidence upon plaintiff). Indeed, toll booth clerk Joanna Brown testified that she felt manipulated by Officer Cunningham when he asked her if she realized that plaintiffs were trying to take his gun - as if he wanted her to remember that fact at a later time. Thus, assuming the truth of plaintiffs' version of the facts, subsequent actions by the ADA would not cut off Rollins' liability for malicious prosecution. See <u>White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988)</u> ("As with the grand jury, however, **[*15]** the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false."). Here, the Court concludes that a genuine issue of material fact exists as to whether Rollins signing of the criminal affidavit initiated the prosecution of plaintiffs for second-degree robbery.

As for the fourth element of malice, the Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served." <u>Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir.1996)</u> (quoting <u>Nardelli v. Stamberg, 44 N.Y.2d 500, 377 N.E.2d 975, 406 N.Y.S.2d 443, 445 (1978)</u>). This element is closely related to the lack of probable cause requirement. See <u>Babi-Ali v. City of New York, 979 F.Supp. 268, 277 (S.D.N.Y.1997)</u> (citing <u>Post v. Elser, 1996 U.S. Dist. LEXIS 10210, 1996 WL 406843, at *8 (N.D.N.Y. July 19, 1996)</u>). "In most cases, the lack of probable cause - while not dispositive - 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.' " <u>Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996)</u> **[*16]** (quoting <u>Conkey v. State, 74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (4th Dep't 1980)</u>).

Here, a jury could infer malice from a lack of probable cause for the second-degree robbery prosecution, which defendants do not dispute for purposes of summary judgment. See <u>Fowler v. Robinson, 1996 U.S. Dist. LEXIS 1710, 1996 WL 67994, at *9 (N.D.N.Y. Feb. 15, 1996)</u>. Plaintiffs contend that Officer Rollins provided false information on his sworn affidavit, pointing to the testimony of plaintiffs and toll booth clerk Joanna Brown that plaintiffs made no threats nor did they exhibit threatening behavior toward the officer. They further allege that the institution of the attempted robbery charge by Officer Rollins was meant to justify his use of the baton against plaintiff Cunningham after Cunningham asked for the officer's shield number. This genuine issue of material fact in regard to the basis for Officer Rollins' filing of the felony charges is sufficient to bring the question of malice before a jury.

Defendant's summary judgment motion as to Plaintiffs' malicious prosecution claims under both <u>§ 1983</u> and state law is denied.

## C. Excessive and Unreasonable Force

Plaintiffs allege that Officer Rollins violated their rights under 42 U.S.C. § 1983 and **[*17]** the Fourth Amendment through his unjustified use of O.C. Chemical Spray. It is undisputed that the plaintiffs suffered only the temporary effects of the O.C. Chemical Spray. It is also undisputed that the plaintiffs did not receive medical treatment as a result of Officer Rollins' use of the O.C. spray.

The City is correct that a *de minimus* use of force rarely will suffice to state a constitutional claim. Further, numerous courts have held that where plaintiff's injuries are *de minimus,* the claim of excessive force cannot rise to the level of a constitutional violation as a matter of law. Even drawing all inferences in favor of plaintiffs, no jury could conclude that the plaintiffs' temporary discomfort constituted more than a *de minimus* injury. See Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (rejecting claim of excessive force based on a *de minimus* injury where plaintiff alleged that the officer threw her to the ground, causing her stitches to open and her leg to bleed); Cunningham v. Rodriguez, 2002 U.S. Dist. LEXIS 22660, 2002 WL 31654960, at *5-6 (S.D.N.Y. Nov. 22, 2002) (rejecting excessive force claim where plaintiff's injury, muscle pain from hits to the face and back, were **[*18]** considered *de minimus); Bove v. New York City,* 1999 U.S. Dist. LEXIS 12112, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (rejecting excessive force claim where plaintiff failed to produce medical records of his injuries and the only documented injury was a bruised head).

In this case, the harm Plaintiffs suffered as a result of being sprayed with mace was also *de minimus.* While the use of mace by an officer may, in some circumstances, amount to excessive force, here Plaintiffs suffered only the expected side-effects: temporary discomfort and disorientation. See McLaurin v. New Rochelle Police Officers, 373 F.Supp.2d 385, 394 (S.D.N.Y.2005) (allegations against defendant officer was not actionable where plaintiffs injuries from the use of mace was temporary discomfort); Mills v. Fenger, 2003 U.S. Dist. LEXIS 1471, 2003 WL 251953, at *3 n.13 (W.D.N.Y. Jan. 3, 2003), vacated on other grounds, 216 Fed. Appx. 7 (2d Cir. 2006) (holding that officers use of pepper spray against plaintiff did not amount to excessive force because plaintiff did not allege, or show, any injuries resulting from the pepper spray).

Because Plaintiffs have not alleged any injuries from being sprayed with mace, the allegation of excessive force against Officer Rollins is **[*19]** not valid. Cf. Murphy v. Neuburger, 1996 U.S. Dist. LEXIS 11164, 1996 WL 442797, at *8 (S.D.N.Y.1996) (granting motion to dismiss where plaintiff did not show that he was injured as a result of defendant's allegedly excessive conduct).

This Court finds that plaintiffs' claims of excessive force based on the O.C. spraying fail as a matter of law, and the Court therefore grants summary judgment for defendants on those claims.

## D. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The defense shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

Disputed factual issues remain regarding Plaintiffs' claim **[\*20]** for malicious prosecution, which turns on whether Officer Rollins had probable cause to make the arrest for second-degree attempted robbery. If the jury finds Officer Rollins' version of events credible, then he had probable cause to arrest the plaintiffs based on that charge and initiate the robbery prosecution against the plaintiffs. If the jury credits plaintiffs' version, then there was no probable cause for the arrest or the initiation of prosecution. A reasonable jury could therefore conclude that under plaintiffs' rendition of the facts, no reasonable officer would have believed that plaintiffs had committed the crime of second-degree robbery and no reasonable officer would have initiated that prosecution against them. This Court therefore rejects Defendant's qualified immunity defense with regard to the malicious prosecution claim. [4]

**FOOTNOTES**

[4] As this Court has already dismissed the plaintiffs' false arrest and excessive force claims based on Officer Rollins' use of mace, no discussion of qualified immunity is necessary for these claims.

### E. State Law Claims of Assault and Battery

Plaintiffs bring state common law actions of assault and battery based on Officer Rollins' use of O.C. Chemical **[\*21]** Spray on them. They contend that their requests for an explanation of Officer Rollins' order to leave the station were not sufficient justification for discharging his mace. Plaintiffs' allege that they never physically or verbally threatened Officer Rollins at any time during the entire incident. Moreover, token booth operator Joanna Brown testified that she never saw plaintiffs move toward Officer Rollins in a threatening manner.

Viewing the facts in the light most favorable to the plaintiffs, a reasonable jury could determine that Officer Rollins discharge of his mace was unreasonable under the circumstances, thereby satisfying the elements of common law assault and battery under New York law. Qualified immunity does not shield Officer Rollins from assault and battery because, given the plaintiff's account, no reasonable officer would have used his mace absent a showing that the plaintiffs were physically threatening him. This Court finds that summary judgment is therefore inappropriate on those claims.

**CONCLUSION**

For the foregoing reasons, this Court grants summary judgment for defendants with respect to plaintiffs' § 1983 claims for false arrest and excessive force based upon the **[\*22]** use of mace, as well as plaintiffs' state law false arrest claims. Summary judgment for defendants is denied with respect to plaintiffs' claims of malicious prosecution under state law and § 1983; common law assault; and common law battery. [5]

**FOOTNOTES**

[5] Plaintiff voluntarily dismissed its Monell claim as well as its state law negligent hiring and retention claims. Defendant does not move for summary judgment based on plaintiff Cunningham's claim of excessive force based on Officer Rollins' use of his baton.

SO ORDERED.

Dated: September 18, 2007

New York, NY

/s/ [Signature]

U.S.D.J.

Source:    Legal > Cases - U.S. > All Courts - By Circuit > 2nd Circuit - Federal & State Cases, Combined ⓘ
Terms:     malicious w/2 prosecution w/10 elements and date geq (11/14/2005)   (Edit Search | Suggest Terms for My Search)
View:      Full
Date/Time: Wednesday, November 14, 2007 - 10:58 AM EST

Search | Research Tasks | Get a Document | Shepard's® | Alerts
History | Delivery Manager | Switch Client | Preferences | Sign Off | Help

About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

LexisNexis®